UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALYSSA MASUCCI,

                              Plaintiff,

                -against-

TORY BURCH, LLC,

                              Defendant.

**COMPLAINT**

Civil Case No.:

**JURY TRIAL DEMANDED**

Plaintiff Alyssa Masucci ("Plaintiff"), by and through her attorneys, Joseph & Norinsberg, LLC, as and for her Complaint against Tory Burch, LLC ("Defendant"), alleges upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.      This is a civil action for damages and equitable relief based upon the willful violations that Defendant committed of Plaintiff's rights guaranteed to her by: (i) the anti-discrimination and anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("Title VII"); (ii) the anti-discrimination and anti-retaliation provisions of the Family and Medical Leave Act ("FMLA"); (iii) the anti-disability discrimination and anti-retaliation provisions of the Americans with Disabilities Act of 1990, as amended ("ADA"); (iv) the anti-disability discrimination and anti-retaliation provisions of the New York State Human Rights Law ("NYSHRL"); (v) the anti-disability discrimination and anti-retaliation provisions of the New York City Human Rights Law ("NYCHRL"); (vi) the New York Labor Law ("NYLL")'s requirement that employers not make unlawful deductions from employees' earned wages, as amended by the "No Wage Theft Loophole Act," NYLL § 193; and/or

(vii) New York contract law for breach of Plaintiff's employment contract; and (viii) any other violations that can be inferred from the facts set forth herein.

**PRELIMINARY STATEMENT**

2.      Plaintiff Alyssa Masucci brings this action against Defendant Tory Burch, LLC for unlawful discrimination, harassment, and retaliation based on her sex, pregnancy, and disability, as well as for unlawful deductions from her earned wages in violation of NYLL § 193.

3.      Plaintiff, a dedicated employee of over a decade, faced severe discrimination and retaliation after disclosing her pregnancy and requesting maternity leave. Despite her exemplary performance, including four promotions and consistent praise, Defendant engaged in a pattern of discriminatory behavior aimed at forcing Plaintiff out of her position.

4.      Defendant's discriminatory actions began shortly after Plaintiff submitted her maternity leave plan. Within days, Defendant initiated a series of baseless disciplinary actions against Plaintiff, citing an alleged violation of a company car service policy that had never been communicated to her, and that Defendant selectively enforced to its benefit.

5.      Defendant's hostility escalated rapidly. Plaintiff was subjected to multiple interrogations about her use of the company car service, which Defendant had previously authorized her to use. Defendant even attempted to coerce Plaintiff's subordinates into blaming her for their own use of the service, demonstrating a clear intent to manufacture grounds for termination.

6.      In a blatant act of retaliation, Defendant terminated Plaintiff's employment on March 7, 2024, less than two months before her scheduled maternity leave. This termination came just days after Plaintiff received a highly favorable performance review and promises of increased responsibilities upon her return from leave.

2

7.     Adding insult to injury, Defendant failed to pay Plaintiff her earned and vested bonus, due on March 4, 2024, in violation of New York Labor Law.

8.     Defendant's actions are part of a broader pattern of discrimination against pregnant women and recent mothers. The company has faced multiple lawsuits and claims alleging similar misconduct in recent years, belying its public image as a champion of women's empowerment.

9.     Now, therefore, through this action, Plaintiff seeks to hold Defendant accountable for its unlawful conduct and to vindicate her rights under federal, state, and local anti-discrimination laws.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.     On May 22, 2024, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant based on gender discrimination, pregnancy discrimination, and disability discrimination in violation of, inter alia, Title VII, the PDA, and the ADA.

11.     On August 13, 2024, the EEOC issued Plaintiff a "Notice of Right to Sue." Plaintiff has commenced this action within ninety days of receipt of that notice from the EEOC.

## JURISDICTION AND VENUE

12.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. §2000(e), et seq. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

13.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims for relief occurred in this judicial district.

**PARTIES**

14.     At all relevant times, Plaintiff worked for Defendant in New York and was an "employee" entitled to protection as defined by Title VII, the FMLA, the ADA, the NYSHRL, and the NYCHRL.

15.     Defendant is a limited liability company organized under the laws of Delaware, with a principal place of business located at 11 W 19th Street, #7, New York, NY 10011.

16.     At all relevant times herein, Defendant employs fifty or more "employees," and is thus an "employer" within the meaning of Title VII, the FMLA, the ADA, the NYSHRL, and the NYCHRL.

**BACKGROUND FACTS**

***Tory Burch: A History and Pattern of Discrimination Against Working Mothers***

17.     Defendant is a U.S.-Based, global women's fashion company, engaged in the design and manufacture of women's clothing, handbags, shoes, and other accessories.

18.     Defendant's website prominently displays its corporate ethos: "EMPOWERING WOMEN." However, this mantra appears to be at odds with its *de facto* policy of discriminating against women who attempt to balance motherhood and professional excellence.

19.     Defendant's eponymous founder, Ms. Burch herself, boasts "My dream — my ambition — has always been to empower women. Women's equality is the evolution of humanity."

20.     But while Ms. Burch proudly exclaims her status as a mother fueling her corporate success, enabling the Company and Ms. Burch to bandy about this rallying cry to hype up its primary consumer base of working mothers, its mantra is at odds with its *de facto* policy: discriminate against women when they dare to attempt the "double win" of motherhood and professional excellence.

21.     To that end, Defendant has been sued several times in recent years for discrimination based on pregnancy and/or family responsibilities and/or caregiver status, including but not limited to *Underwood v. Tory Burch, LLC* and *Moro v. Tory Burch, LLC*.

22.     Upon information and belief, Defendant has also faced multiple pre-litigation demands alleging pregnancy and/or family responsibilities discrimination.

23.     As was the case with many others - - including but not limited to Megan Morro, Elise Hassan Novick, and Megan Aurigemma, to name but a few - - this was the very fate that befell Plaintiff when Defendant unlawfully terminated her employment for the sole reason that she was about to begin her second maternity leave.

### *Plaintiff's Employment: From Allstar to Pariah After Planning her Second Pregnancy Leave*

24.     Plaintiff began her employment with Defendant in November 2013 as a Product Development Associate. Over the course of more than a decade, Plaintiff demonstrated exceptional dedication and skill, earning four separate promotions.

25.     In November 2023, Plaintiff celebrated her 10-year anniversary with Defendant, receiving a pair of Tiffany's earrings and an additional ten days off as paid "tenure time" in recognition of her service.

26.     Plaintiff's colleagues, including more senior and older employees, often referred to her as their mentor and "work mom," highlighting her value to the organization.

27.     On October 19, 2023, Plaintiff shared news of her second pregnancy with her manager, Senior Director of Product Development & Technology Design, Ms. Medina Hodzic.

28.     The same day, Plaintiff notified Defendant's human resources department of her pregnancy by emailing Krystal Francis, Senior Manager of Talent.

29.     On November 10, 2023, Plaintiff submitted her claim for maternity leave benefits to Defendant's insurance carrier, MetLife, which acknowledged and approved the claim the same day.

30.     Plaintiff's expected delivery date was April 26, 2024, with her anticipated last day of work set for April 25, 2024.

31.     On February 1, 2024, Plaintiff met with Ms. Hodzic to discuss her maternity leave plan.

32.     Ms. Hodzic immediately approved Plaintiff's plan, which included the use of her paid time off and tenure time, resulting in approximately six months and one week of maternity leave, with an anticipated return date of late October 2024.

***Defendant Creates a Sham Investigation to Manufacture Pretext for its Discrimination and Retaliation***

33.     On February 5, 2024, just four days after receiving approval for her maternity leave plan, Plaintiff was called into a meeting with Danny Martin, Global Head of Ready-to-Wear, Jewelry, Tech, and Sport. During this five-minute meeting, Mr. Martin questioned Plaintiff about her understanding of Defendant's car service policy, which had never been clearly communicated to her.

34.     Plaintiff was thrown by Martin's questioning her usage of Defendant's car service.

35.     This is because Defendant had previously approved Plaintiff's use of its company car service as early as 2021 when Plaintiff's then-acting manager, Mariel O'Brien, Vice President and General Manager of Tory Sport, granted her approval of Defendant's car service policy while Plaintiff was pregnant with her first child.

36.     O'Brien, acting on behalf of Defendant, and with its knowledge and consent, approved Plaintiff's usage of the company's car service due to the cost-effectiveness of using a

for-hire car service to assist Plaintiff with her commute during the Omicron wave of the COVID-19 Global Pandemic. That is, it was far more cost effective to permit Plaintiff to use the company's car service to commute from her home in Staten Island to Defendant's Manhattan offices, as compared to using the ride-sharing service, Lyft, to alleviate the physical discomfort associated with Plaintiff's first pregnancy.

37.     At the time Defendant approved Plaintiff's use of the company car service in 2021, Plaintiff's direct manager, Vice President of Product Development and Design Kerstin Dorst, was stationed in Germany and not physically present in the United States.

38.     Nevertheless, Ms. Dorst was Plaintiff's actual manager, and upon information and belief had actual or constructive knowledge of Plaintiff's authorization to use the company's car service in the manner in which she did.

39.     At no time prior to the February 5, 2024, meeting between Plaintiff and Mr. Martin had Defendant, or anyone acting on behalf of Defendant, ever questioned or confronted Plaintiff about her use of the company's car service.

40.     This so-called "audit" of the use of the company's car service only occurred for the very first time after Plaintiff had requested, and was approved for, her maternity leave following her meeting with Ms. Hodzic on February 1, 2024.

**_Defendant Ratchets Up a Hostile Work Environment Leading to Plaintiff's Termination_**

41.     On the same day as Plaintiff's meeting with Mr. Martin, he also met with Plaintiff's direct report, Product Development Associate Victoria Gleeson, aggressively questioning her about the car service usage and attempting to coerce her into blaming Plaintiff.

42.     On February 22, 2024, Plaintiff received a highly favorable annual performance review from Ms. Hodzic. Ms. Hodzic promised Plaintiff a merit increase and discussed giving her

more responsibility upon her return from leave, with the goal of promoting her the following year. No mention was made of any issues related to the car service.

43.    On February 28, 2024, Plaintiff was called into a second meeting with two human resources representatives, Ms. Francis and Vice President of Talent, Leah Goodwin, to further discuss Plaintiff's use of Defendant's car service.

44.    During this meeting, Ms. Goodwin made false statements about the policy's location in Defendant's handbook and Plaintiff's frequency of car service use.

45.    Specifically, Ms. Goodwin claimed that the company car service policy was found in Defendant's employee handbook; yet the employee handbook only contains a travel policy which did not include any details about the actual car service policy.

46.    On February 29, 2024, Plaintiff met with Ms. Hodzic to express her concerns about potential reprisal. Ms. Hodzic was shocked and unaware of the previous meetings, indicating a nefarious purpose behind these clandestine discussions.

47.    Ms. Hodzic promised to confer with Mr. Martin immediately after meeting with Plaintiff on February 29, 2024.

48.    Later that day, Ms. Hodzic informed Plaintiff that she had spoken with Mr. Martin, who stated that the questioning concerning the car service policy was "not a big deal," that "he's taking care of it," and "there's nothing that we need to worry about."

49.    On March 1, 2024 and March 4, 2024, two other members of Plaintiff's team, Dustin Mendoza McSwane and Lily Holm, were terminated.

50.    During a subsequent team meeting, management emphasized that the remaining team members, including Plaintiff, were part of the "A-Team" and crucial to Defendant's success.

51.     On the same day as the A-Team meeting, Ms. Dorst confronted Ms. Gleeson in furtherance of the so-called car service "audit."

52.     Ms. Dorst further inquired into Ms. Gleeson's willingness to blame Plaintiff for her car service usage, explicitly stating that if Ms. Gleeson was willing to "throw Alyssa under the bus" and blame her for Ms. Gleeson's own usage of the company car service, then things would turn out better for Ms. Gleeson at the conclusion of the audit.

53.     Ms. Gleeson refused to accept Defendant's invitation to "throw Alyssa under the bus," as neither Ms. Gleeson nor Plaintiff were ever made aware of any alleged policy violations until after Plaintiff was approved for her maternity leave.

54.     Despite this assurance, on March 7, 2024, Defendant summarily terminated Plaintiff's employment, citing her purported car service usage as violating "policy."

55.     Defendant also summarily terminated Ms. Gleeson's employment on the same day, and for the same reason.

56.     Upon information and belief, other colleagues of Plaintiff and Ms. Gleeson similarly used the company's car service contrary to what Defendant now claimed to be the alleged written version of the policy, yet they were not terminated for doing so, demonstrating a discriminatory enforcement of the policy to Plaintiff's detriment, and to the detriment of Ms. Gleeson for refusing to act as a pawn in Defendant's unlawful, discriminatory scheme.

57.     When Plaintiff asked if there was "anything that can be done" because "it's been ten years, and nobody ever brought this up to me," Ms. Goodwin simply directed Plaintiff to clean out her desk.

58.     Adding to Plaintiff's humiliation, Defendant posted Ms. Dorst nearby to personally observe and oversee Plaintiff and Ms. Gleeson gathering their belongings after the termination.

*__Wage Theft on Top of Discrimination: Unlawfully Refusing to Pay Earned and Vested Bonuses__*

59.    Making matters even worse, Defendant further retaliated against Plaintiff by unlawfully withholding her earned and vested annual bonus and refusing to pay it to her.

60.    That is, Plaintiff's and Ms. Gleeson's termination occurred three days *__after__* they were scheduled to receive their end-of-year bonus.

61.    Defendant failed to pay Plaintiff her earned and vested bonus, which was due on March 4, 2024, claiming a "glitch in the system."

62.    When Plaintiff inquired about her bonus after her termination, she received no response.

63.    Yet Defendant has a practice of paying severance and bonuses to employees terminated for cause for far more serious infractions than that alleged of Plaintiff, demonstrating clear animus toward Plaintiff.

64.    Defendant's actions are part of a broader pattern of discrimination against pregnant women and recent mothers, as evidenced by multiple lawsuits and pre-litigation demands alleging similar misconduct in recent years.

65.    This pattern belies Defendant's public image as a champion of women's empowerment, as prominently displayed on its website.

66.    Indeed, Defendant went so far as to engage in post-employment retaliation against Plaintiff by challenging her claim for unemployment benefits nearly *six months after* terminating her employment, *__after__* the EEOC had issued Plaintiff her Notice of Right to Sue in anticipation of this litigation.

67.     That is, Plaintiff had been collecting unemployment insurance benefits for nearly six months without incident, only to learn on September 17, 2024 that Defendant - - for the very first time - - was challenging her entitlement to benefits.

68.     Defendant's unlawful acts of pregnancy discrimination, retaliation, wage theft, and wrongful termination caused Plaintiff to suffer, and continue to suffer, monetary and economic damages as well as severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT
### *Gender Discrimination and Harassment in Violation of Title VII*

42.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

43.     Defendant, through its agents, discriminated against Plaintiff on the basis of her gender and pregnancy, in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff based on her gender and pregnancy, and by subjecting Plaintiff to adverse employment actions, including termination.

44.     As also described above, Defendant terminated Plaintiff's employment on the basis of her gender and pregnancy.

45.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

46.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and

emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

47.    Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT
### *Retaliation in Violation of Title VII*

48.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

49.    Defendant retaliated against Plaintiff for engaging in protected activity under Title VII, including but not limited to requesting maternity leave and opposing discriminatory treatment, by subjecting her to adverse employment actions, including termination.

50.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

51.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, for which she is entitled to an award of monetary damages and other relief.

52.    Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANT
### *Disability Discrimination in Violation of the ADA*

53.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

54.     Defendant discriminated against Plaintiff on the basis of her disability (pregnancy) in violation of the ADA by subjecting her to adverse employment actions, including termination, and failing to provide reasonable accommodations.

55.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, economic loss and emotional distress, for which she is entitled to an award of monetary damages and other relief.

56.     Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the ADA, for which Plaintiff is entitled to an award of punitive damages.

**FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT**
*Retaliation in Violation of the ADA*

57.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

58.     Defendant retaliated against Plaintiff for engaging in protected activity under the ADA, including but not limited to requesting accommodations for her pregnancy, by subjecting her to adverse employment actions, including termination.

59.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, economic loss and emotional distress, for which she is entitled to an award of monetary damages and other relief.

60.     Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of the ADA, for which Plaintiff is entitled to an award of punitive damages.

**FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT**
*Interference and Retaliation in Violation of the FMLA*

61.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

62.     Defendant interfered with Plaintiff's rights under the FMLA by terminating her employment shortly before her scheduled maternity leave, thereby preventing her from exercising her FMLA rights.

63.     Defendant retaliated against Plaintiff for attempting to exercise her FMLA rights by terminating her employment.

64.     As a direct and proximate result of Defendant's unlawful conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, economic loss and emotional distress, for which she is entitled to an award of monetary damages and other relief.

65.     Defendant's unlawful actions constitute willful violations of the FMLA, for which Plaintiff is entitled to liquidated damages.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT
### *Gender Discrimination in Violation of the NYSHRL*

66.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

67.     The NYSHRL prohibits discrimination in the terms, conditions, and privileges of employment based on an individual's gender and pregnancy.

68.     Defendant, through its agents, as described above, discriminated against Plaintiff in violation of the NYSHRL by subjecting Plaintiff to a hostile work environment due to her gender and pregnancy.

69.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered economic losses, and continues to suffer such losses, for which she is entitled to an award of monetary damages.

70.     As a direct and proximate result of Defendant's conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional

distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT
### *Gender-Based Retaliation in Violation of the NYSHRL*

71.     Plaintiff hereby repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

72.     The NYSHRL prohibits employers from retaliating against employees who engage in activity protected by the NYSHRL.

73.     As described above, Defendant, through its agents retaliated against Plaintiff on the basis of her requests for accommodation due to her pregnancy and her opposition to Defendant's gender discrimination.

74.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered economic losses, and continues to suffer such losses, for which she is entitled to an award of monetary damages.

75.     As a direct and proximate result of Defendant's conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANT
### *Gender Discrimination in Violation of the NYCHRL*

76.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

77.     The NYCHRL prohibits discrimination in the terms, conditions, and privileges of employment based on an individual's gender and pregnancy.

78.     Defendant, through its agents as described above, discriminated against Plaintiff in violation of the NYCHRL by subjecting Plaintiff to a hostile work environment due to her gender and pregnancy.

79.     As a direct and proximate result of Defendant's conduct in violation of the NYCHRL Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

### NINTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Gender-Based Retaliation in Violation of the NYCHRL*

80.     Plaintiff hereby repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

81.     The NYCHRL prohibits employers from retaliating against employees who engage in activity protected by the NYCHRL.

82.     As described above, Defendant, through its agents, constructively discharged Plaintiff's employment on the basis of her requests for accommodations due to her pregnancy and her opposition to Defendant's gender discrimination.

83.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered economic losses, and continues to suffer such losses, for which she is entitled to an award of monetary damages.

84.     As a direct and proximate result of Defendant's conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional

distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

### TENTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Disability Discrimination in Violation of the NYSHRL*

85.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

86.    The NYSHRL prohibits discrimination in the terms, conditions, and privileges of employment based on an individual's disability.

87.    Defendant, through its agents, as described above, discriminated against Plaintiff in violation of the NYSHRL by subjecting Plaintiff to a hostile work environment due to her disability.

88.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered economic losses, and continues to suffer such losses, for which she is entitled to an award of monetary damages.

89.    As a direct and proximate result of Defendant's conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

### ELEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Disability-Based Retaliation in Violation of the NYSHRL*

90.    Plaintiff hereby repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

91.    The NYSHRL prohibits employers from retaliating against employees who engage in activity protected by the NYSHRL.

92.    As described above, Defendant, through its agents retaliated against Plaintiff on the basis of her requests for accommodation due to her disability and her opposition to Defendant's disability discrimination.

93.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered economic losses, and continues to suffer such losses, for which she is entitled to an award of monetary damages.

94.    As a direct and proximate result of Defendant's conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

<u>**TWELFTH CLAIM FOR RELIEF AGAINST DEFENDANT**</u>
*<u>Disability Discrimination in Violation of the NYCHRL</u>*

95.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

96.    The NYCHRL prohibits discrimination in the terms, conditions, and privileges of employment based on an individual's disability.

97.    Defendant, through its agents as described above, discriminated against Plaintiff in violation of the NYCHRL by subjecting Plaintiff to a hostile work environment due to her disability.

98.    As a direct and proximate result of Defendant's conduct in violation of the NYCHRL Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional

distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

### THIRTEENTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Disability-Based Retaliation in Violation of the NYCHRL*

99.     Plaintiff hereby repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

100.    The NYCHRL prohibits employers from retaliating against employees who engage in activity protected by the NYCHRL.

101.    As described above, Defendant, through its agents, constructively discharged Plaintiff's employment on the basis of her requests for accommodations due to her disability and opposition to Defendant's disability discrimination.

102.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered economic losses, and continues to suffer such losses, for which she is entitled to an award of monetary damages.

103.    As a direct and proximate result of Defendant's conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

### FOURTEENTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Failure to Engage in a Cooperative Dialogue in Violation of the NYCHRL*

104.    Plaintiff hereby repeats, reiterates, and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

105.    The NYCHRL requires an employer to engage in a cooperative dialogue with its employee who has requested an accommodation, or the employer has notice may require such an accommodation.

106.    As described above, Defendant utterly failed to engage in a cooperative dialogue with Plaintiff, choosing instead to punish Plaintiff for needing accommodations and constructively discharging her employment.

107.    As a direct and proximate result of Defendant's violation of the NYCHRL, Plaintiff has suffered economic losses, and continues to suffer such losses, for which she is entitled to an award of monetary damages.

108.    As a direct and proximate result of Defendant's conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## FIFTEENTH CLAIM FOR RELIEF AGAINST DEFENDANT
### *Unlawful Deduction in Violation of NYLL § 193*

109.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

110.    NYLL § 193 prohibits employers from making any deduction from an employee's wages, outside of certain limited enumerated circumstances.

111.    As described above, Defendant is an "employer" within the meaning of the NYLL, while Plaintiff is an employee within the meaning of the NYLL.

112.    As also described above, Defendant deducted from Plaintiff's earned wages without her consent by refusing to pay her a portion of, or all of, her first-year's commissions / non-discretionary bonuses.

113.    As a result, Defendant is liable to Plaintiff for the amount of each unlawful deduction / underpayment.

114.    Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendant's violation of the NYLL's unlawful deduction provision.

**SIXTEENTH CLAIM FOR RELIEF AGAINST DEFENDANT**
*Breach of Contract*

115.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

116.    As described above, during the first year of her employment based on Defendant's fiscal year calendar, Plaintiff performed work according to the terms of her sales commission agreement, i.e., Defendant's Sales Bonus Plan, qualifying for her earned and vested commissions / non-discretionary bonuses.

117.    Plaintiff remained an employee in good standing at the time the commissions / bonuses were due at the conclusion of her first fiscal year of employment, thereby performing all of her obligations under the contract.

118.    As further described above, notwithstanding that Plaintiff fully performed her obligations under her contract during her first year of employment, Defendant breached the contract by failing to pay to Plaintiff her earned and vested commissions / bonuses, which remain outstanding and owed to Plaintiff.

119.    Accordingly, and as an alternative to the NYLL unlawful deduction claim, as a result of Defendant's actions, Plaintiff is entitled to recover from Defendant the shortfall between

21

her commissions/bonus entitlement and what she received from Defendant as her first-year paid commissions/bonuses, plus interest, under a breach of contract theory of relief.

## DEMAND FOR A JURY TRIAL

120.    Pursuant to FRCP 38(b), Plaintiff demands a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a.    A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws;

b.    Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

d.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

e.    An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

f.    An award of punitive damages;

g.    An award of liquidated damages pursuant to the FMLA and NYLL;

h.    An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

i.    Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
          September 26, 2024

                                        Respectfully submitted,

                                        **JOSEPH & NORINSBERG, LLC**

                    By: _____
                                        MICHAEL R. MINKOFF, ESQ. (MM 4787)
                                        JON L. NORINSBERG, ESQ. (JN 2133)
                                        BENNITTA L. JOSEPH, ESQ. (BJ 1064)
                                        110 East 59th Street, Suite 2300
                                        New York, New York 10022
                                        Tel.: (212) 227-5700
                                        Fax: (212) 656-1889
                                        *Attorneys for Plaintiff*

23